UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHOWNOW, INC, <br><br>          Plaintiff, <br><br>     v. <br><br> OWNER.COM, <br><br>          Defendant. | Case No.  25-cv-07315-VKD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 15 |

Plaintiff ChowNow, Inc. ("ChowNow") brings this action, asserting seven claims against defendant Owner.com, Inc. ("Owner.com").  Dkt. No. 1.  Owner.com moves to dismiss the complaint for lack of standing, pursuant to Rule 12(b)(1), and for failure to state a claim, pursuant to Rule 12(b)(6).  Dkt. No. 15.  ChowNow opposes the motion.  Dkt. No. 24.  The Court heard oral argument on the motion on December 16, 2025.  Dkt. No. 27.[1]

Upon consideration of the moving and responding papers and the oral arguments presented, the Court denies Owner.com's motion to dismiss for lack of standing and grants in part and denies in part its motion to dismiss for failure to state a claim, with leave to amend.

## I.    BACKGROUND

According to the complaint, plaintiff ChowNow provides a "digital platform for restaurants to attract, engage, and retain customers."  Dkt. No. 1 ¶ 9.  ChowNow alleges that it serves over 22,000 restaurant partners.  *Id.*  It also alleges that it owns a registered trademark, CHOWNOW, that it uses in connection with its business.  *Id.* ¶ 10.

---

[1] All parties have consented to magistrate judge jurisdiction.  Dkt. Nos. 18, 22.

United States District Court<br>Northern District of California

ChowNow asserts that defendant Owner.com is a direct competitor that has "engaged in a pattern of unfair, misleading and deceptive business practices." *Id.* ¶¶ 25, 26.  In particular, ChowNow alleges that Owner.com's comparative advertising includes false and misleading statements about ChowNow on various websites, including Owner.com's website, the RestaurantGPT website, and a YouTube channel.  *Id.* ¶ 30.

In this action, ChowNow asserts the following seven claims against Owner.com: (1) false advertising and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (3) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (4) violation of California's false advertising law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (5) trade libel; (6) intentional interference with contractual relations; and (7) intentional interference with prospective economic advantage.  *Id.* at 43-50.  ChowNow claims that because of Owner.com's conduct, ChowNow has suffered "lost sales and revenue, lost economic prospects, harm to ChowNow's registered intellectual property, and reputational harm." *Id.* ¶ 1.  It alleges "monetary losses of at least hundreds of thousands of dollars," and erosion of the goodwill associated with its CHOWNOW trademark.  *Id.* ¶¶ 33, 190.  ChowNow seeks injunctive relief; damages, including punitive damages; attorneys' fees and costs; and pre-judgment and post-judgment interest.  *Id.* at 50-52.  ChowNow also seeks "an accounting of Owner.com's profits resulting from Owner.com's false and misleading advertising and marketing, trademark infringement, and unfair competition and such profits to be paid over to ChowNow." *Id.* at 51.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  To establish standing, a plaintiff must demonstrate (1) an "injury in fact," (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected

interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). To be particularized, an injury "must affect the plaintiff in a personal and individual way," and to be concrete, the injury must be real and not abstract. *Id.* at 339-40 (internal quotation marks omitted).

A plaintiff has the burden to establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "[S]hould a plaintiff fail to meet his standing burden, the lawsuit must be dismissed under Rule 12(b)(1)." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1033 (N.D. Cal. 2019).

**B.      Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

Rule 8(a)(2) requires that the complaint provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at

United States District Court
Northern District of California

United States District Court
Northern District of California

*3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).  Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### C.    Rule 9(b)

Allegations sounding in fraud, including allegations of false advertising, are subject to the heightened pleading standard under Rule 9(b). *Clorox Co. v. Reckit Beckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019) (stating that Lanham Act, UCL, and FAL claims sounding in fraud are subject to the Rule 9(b) standard).  Under Rule 9(b), allegations of fraud must be pled "with particularity." Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (citations and quotations omitted).  This includes pleading "the who, what, when, where, and how of the misconduct charged." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) (citation and quotations omitted).

### III.    DISCUSSION

Owner.com moves to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim.  Dkt. No. 15.  The parties also request judicial notice of various documents and YouTube videos.  Dkt. Nos. 15-7, 24-2. The Court first addresses the parties' requests for judicial notice before considering Owner.com's Rule 12(b)(1) arguments regarding standing and Rule 12(b)(6) arguments regarding failure to state a claim for relief.

### A.    Parties' Requests for Judicial Notice

In conjunction with its motion, Owner.com filed a request for judicial notice of five documents:  (1) a January 15, 2025 screen print showing ChowNow's Capterra review; (2) a January 15, 2025 screen print showing Owner.com's Capterra review; (3) an October 9, 2025 screen print of Owner.com's website; (4) a September 24, 2024 YouTube video posted by

4

Owner.com; and (5) a September 4, 2024 YouTube video posted by Owner.com. Dkt. No. 15-7. ChowNow opposes Owner.com's request for judicial notice. Dkt. No. 24-2. ChowNow argues that if the Court takes judicial notice of Owner.com's materials, it should also take judicial notice of ChowNow's Exhibits 6 through 14 to the complaint. *Id.* at 1, 5-8. Owner.com opposes ChowNow's request for judicial notice. Dkt. No. 26-1.

Federal Rule of Evidence 201 states that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). These reliable sources include "matters of public record . . . as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (cleaned up). Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018).

The Court declines to take judicial notice or incorporate by reference materials intended to undermine the factual allegations in the complaint at this stage. *See id.* at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."). Because the facts contained in Owner.com's proposed materials are subject to reasonable dispute and ChowNow disputes the authenticity of the materials, the Court will not take notice of Owner.com's materials.

Exhibits 6 through 14 to the ChowNow complaint are already part of the record before the Court, so there is no need to take judicial notice of their existence. However, the Court does not take judicial notice of disputed facts contained within any of those exhibits.

### B.    Rule 12(b)(1): Article III Standing

Owner.com contends that ChowNow lacks standing. Dkt. No. 15 at 11. The Court begins by addressing Owner.com's threshold argument that ChowNow lacks standing under Article III.

"In a false advertising suit, a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-cv-

United States District Court
Northern District of California

05638-BLF, 2020 WL 6826487, at *4 (N.D. Cal. June 4, 2020) (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011)).  "A party may prove its injury (1) by using lost sales data, that is 'actual market experience and probable market behavior,' or (2) 'by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business.'"  *Id*.  "Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't conjectural or hypothetical."  *Id*.

Owner.com argues that ChowNow lacks Article III standing because it fails to show "lost sales data" or a "chain of inferences" showing injury traceable to Owner.com's alleged conduct.  Dkt. No. 15 at 11-12.  Owner.com notes that "there is no factual allegation that [p]laintiff has lost a single specific customer as a result of anything that Owner.com did or said over the past several years."  *Id.* at 12.  ChowNow argues that it has adequately alleged injuries directly caused by Owner.com because it alleges that Owner.com's false advertising "eroded the goodwill associated with ChowNow" and "directly resulted in ChowNow losing actual customers, sales, and revenue," including "hundreds of thousands of dollars."  Dkt. No. 24 at 8-9 (quoting Dkt. No. 1 ¶¶ 33, 190).  Owner.com responds that ChowNow's allegations are "vague" and "lack a factual underpinning."  Dkt. No. 26 at 3.

ChowNow need not allege that it lost a specific customer because of a specific statement by Owner.com in order to establish standing.  Such a heightened Article III standing requirement "would seem to 'confuse[] the jurisdictional inquiry (does the court have power under Article III to hear the case?) with the merits inquiry (did the defendant violate the law?).'"  *Intuit Inc. v. HRB Tax Grp., Inc.*, No. 5:24-cv-00253-BLF, 2025 WL 1168897, at *3 (N.D. Cal. Apr. 22, 2025) (quoting *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1094 (9th Cir. 2017)).  "[W]hile the causal connection put forward for standing purposes cannot be too speculative or rely on conjecture about the behavior of other parties, it need not be so airtight at this stage of the litigation as to demonstrate that the plaintiff would succeed on the merits."  *Id.* at *4 (cleaned up) (citation omitted); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

United States District Court
Northern District of California

United States District Court
Northern District of California

ChowNow has adequately alleged an injury through a "chain of inferences" to establish Article III standing. As a first link in the chain of inferences supporting standing, ChowNow alleges that ChowNow and Owner.com are direct competitors, such that the Court can reasonably infer that the parties compete for the same revenue in the restaurant digital platforms market. *See* Dkt. No. 1 ¶ 26. The second link in the chain is that the false advertising is material and likely to affect customer decisions. ChowNow alleges that Owner.com's false representations about the parties' Capterra scores, including scores for "Ease of Use," "Value for Money," "Available Features," and "Customer Service," harm ChowNow's "business relations and reputation by deceiving current and prospective customers." *Id.* ¶¶ 49, 50, 55. ChowNow asserts that Owner.com's false statements are the kind that restaurant owners "would reasonably rely on . . . when deciding which digital platform service to purchase." *Id.* ¶ 40; *see also id.* ¶¶ 48, 109, 201. ChowNow's allegations are sufficient at this stage to establish Article III standing. *See Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280-JST, 2021 WL 11593043, at *3 (N.D. Cal. Aug. 16, 2021) (pain relief patch seller sufficiently pled injury by alleging that defendants advertised their products as containing "the maximum amount of lidocaine available in patch form" and that such advertising deceived consumers into buying defendants' products instead of plaintiff's products); *Intuit,* 2025 WL 1168897, at *4 (tax preparation product provider sufficiently alleged that competitor's advertising regarding "expert final review" was "likely to affect consumer purchasing decisions" and that "expert final review is material to consumers").

The Court concludes that ChowNow has alleged a factual basis for Article III standing.

### C.    Rule 12(b)(6): Statutory Standing

Owner.com also contends that ChowNow lacks standing under the Lanham Act, UCL, and FAL. Dkt. No. 15 at 11-15; Dkt. No. 26 at 4-6. Lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6). *Maya*, 658 F.3d at 1067; *see Lexmark,* 572 U.S. at 128 n.4 (statutory standing inquiry "does not implicate subject-matter jurisdiction").

#### 1. Lanham Act:  False Advertising

Statutory standing under the Lanham Act involves a more demanding inquiry than Article III standing. *Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-cv-03536-JST, 2025 WL

2721684, at *2 (N.D. Cal. Sept. 24, 2025) (citing *ThermoLife Int'l LLC v. BPI Sports, LLC*, 2022 WL 612669 (9th Cir. 2022)).  The Lanham Act does not allow "all factually injured plaintiffs to recover." *Lexmark*, 572 U.S. at 129.  Although Owner.com contends that ChowNow "lacks standing under . . . the Lanham Act" and provides the legal standard for Lanham Act standing for a false advertising claim, Owner.com does not brief the issue separately from its arguments regarding Article III standing in its motion to dismiss; it addresses this issue only in its reply.  *See* Dkt. No. 15 at 11-12; Dkt. No. 26 at 4-5.  In addition, the parties' arguments regarding Lanham Act statutory standing appear to focus solely on ChowNow's standing to bring a false advertising claim, and not on ChowNow's standing to bring a trademark infringement claim.  *See* Dkt. No. 24 at 9-10; Dkt. No. 26 at 4-5.  For this reason, the Court considers only whether ChowNow has statutory standing to sue for false advertising under the Lanham Act.

To establish standing for a false advertising claim under the Lanham Act, a plaintiff must allege that its injury (1) is within the zone of interests protected by the Lanham Act and (2) was proximately caused by defendant's violation of the Lanham Act.  *Lexmark*, 572 U.S. at 127-32.  For an injury to be "within the zone of interest in a § 1125(a) false-advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32.  When the parties are direct competitors, there is a presumption of harm.  *See TrafficSchool.com*, 653 F.3d at 825-26.  The requirement that a plaintiff be within the "zone of interest" is not "especially demanding," and "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Lexmark*, 572 U.S. at 130 (citations and quotations omitted).  For an injury to be "proximately caused" by defendant's conduct, a plaintiff must allege "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising" which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

ChowNow sufficiently alleges that its injuries are within the "zone of interest" protected by the Lanham Act because the parties are direct competitors.  *See* Dkt. No. 1 ¶ 26.  In addition, ChowNow alleges that Owner.com's "deceitful and misleading business practices have directly

resulted in ChowNow losing actual customers, sales and revenue," including specifically that Owner.com induced ChowNow's former customer, Metro Pizza, to switch to Owner.com. *Id.* ¶¶ 33, 128. This type of allegation of "diversion of sales to a direct competitor [is the] paradigmatic direct injury from false advertising." *See Lexmark*, 572 U.S. at 138; *see also TrafficSchool.com*, 653 F.3d at 825 ("[A] false advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim.").

Therefore, the Court finds that ChowNow has sufficiently alleged both the "zone of interest" and "proximate causation" necessary to establish standing to sue for false advertising under the Lanham Act.

### 2. UCL and FAL

Owner.com argues that ChowNow also lacks statutory standing for its UCL and FAL claims because ChowNow "did not rely on any statement by Owner.com" and did not allege any "causal connection" between Owner.com's business practices and ChowNow's injury. Dkt. No. 15 at 13-14. Owner.com further contends that ChowNow "does not identify a single customer or market participant that was exposed to—let alone relied on—any of the challenged statements[.]" *Id.* at 15.

"The standing requirements under California's FAL and UCL and the federal Lanham Act are generally the same." *Eli Lilly*, 2025 WL 2721684, at *5 (citation omitted). For UCL and FAL claims, plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (Cal. 2011) (emphasis in original). District courts within the Ninth Circuit are split on the question of whether a competitor plaintiff must plead its own reliance on a defendant's allegedly misleading statement. *Lona's Lil Eats, LLC v. DoorDash, Inc.*, No. 20-cv-06703-TSH, 2021 WL 151978, at *10 (N.D. Cal. Jan. 18, 2021). Owner.com correctly notes that the majority of district courts have required a plaintiff to plead its own reliance. *See id.*; Dkt. No. 15 at 13. The minority approach does not require a competitor plaintiff to allege its own reliance, as long as the plaintiff has alleged a sufficient

United States District Court
Northern District of California

9

United States District Court
Northern District of California

causal connection between the challenged misconduct and the injury suffered. *Lona's Lil Eats*, 2021 WL 151978, at \*12 (quoting *Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. 17-cv-1551-DOC-JDEx, 2017 WL 10526121, at \*41 (C.D. Cal. Nov. 14, 2017)) ("[I]mposing a direct reliance requirement on competitor claims would impose a 'superficial hurdle' on competitor plaintiffs[.]").  The Court finds the minority approach more persuasive given the nature of ChowNow's allegations and the statutes' purpose, which is "to protect both consumers and competitors" alike. *Kwikset*, 51 Cal. 4th at 344.

ChowNow alleges that "Owner.com's conduct has caused lost sales and revenue, lost economic prospects, harm to ChowNow's registered intellectual property, and reputational harm to ChowNow." Dkt. No. 1 ¶ 1.  ChowNow also alleges that it has "lost sales associated with customers who left ChowNow's service for Owner.com because of Owner.com's false and misleading statements about ChowNow's business." *Id.* ¶ 191.  Because ChowNow has pled "factual allegations rather than legal conclusions" about "lost sales," ChowNow's allegations are sufficient for standing purposes under the FAL and UCL statutes. *See Eli Lilly*, 2025 WL 2721684, at \*5; *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) (allegation of "economic injury in the form of lost customers and sales revenue . . . is sufficient to satisfy standing under the UCL"); *Simpson Strong-Tie Co. Inc. v. MiTek Inc.*, No. 20-cv-06957-VKD, 2021 WL 1253803, at \*6-7 (N.D. Cal. Apr. 5, 2021) (allegations that defendant's conduct caused plaintiff to lose sales were sufficient to plead standing under UCL and FAL).  The Court finds that ChowNow has alleged monetary harm caused by Owner.com's conduct sufficient to demonstrate standing for its UCL and FAL claims.

### D.    Rule 12(b)(6):  Claims 1-7

Owner.com moves to dismiss the complaint under Rule 12(b)(6) on the grounds that it fails to state a claim for relief.

#### 1.  Claims 1 and 4: False advertising

ChowNow asserts claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and the FAL, Cal. Bus. & Prof. Code § 17500, alleging that Owner.com made misleading, deceptive, and false statements regarding ChowNow's business, products, and services.  Dkt. No.

10

1 ¶¶ 198-205, 220-224.  Owner.com argues that ChowNow fails to sufficiently plead that the statements at issue are false and that ChowNow lost customers because of Owner.com's statements.  Dkt. No. 15 at 16-19.  ChowNow responds that it has adequately pled allegations that Owner.com's statements are false or misleading, and that the statements are material to consumers.  Dkt. No. 24 at 12-14.

A claim for false advertising under the Lanham Act has five elements: (1) a false or misleading statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.  *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012); 15 U.S.C. § 1125(a)(1).  Similarly, the FAL prohibits "untrue or misleading" advertising "which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  Any violation of the FAL necessarily violates the UCL.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).  "In the Ninth Circuit, claims of unfair competition and false advertising under [the FAL and the UCL] are substantially congruent to claims made under the Lanham Act."  *See, e.g.*, *Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280-JST, 2022 WL 20286688, at *9 (N.D. Cal. Feb. 24, 2022).  The Court therefore consolidates its analysis of ChowNow's false advertising claims under federal and state law.

ChowNow challenges the following five categories of statements as false or misleading:

(1) **Capterra/G2 scores:** Owner.com republished Capterra scores and G2 scores issued by third parties on its website and represented that the scores were "current as of 2025." *See* Dkt. No. 1 ¶¶ 41-85.

(2) **Comparison page statements:** Owner.com's webpage comparing Owner.com and ChowNow states that Owner.com provides a "2-4x conversion rate on Owner websites

United States District Court
Northern District of California

United States District Court
Northern District of California

vs. average" and that restaurants using Owner.com experience "+85% reorders from guests." *Id.* ¶ 87. The comparison page also states that "when Google visitors try to order, ChowNow sends them to the ChowNow app, which isn't good for your website's Google ranking." *Id.* ¶ 95. In addition, it states, "Unlike BentoBox, who adds fees for implementation, customizing your accounts, and adding new capabilities, we'll charge you a flat fee to access the whole platform." *Id.* ¶ 98.

(3) **Customer testimonials:** Owner.com's comparison page includes a section titled "Hear from restaurant owners who switched to Owner.com," which includes a customer testimonial by Rahul Bhatia, the owner of Saffron Indian Kitchen. *Id.* ¶¶ 102-108. In addition, Owner.com's website contains an article titled "How Metro Pizza increased direct online sales by $10,000/m by switching from ChowNow for Owner." *Id.* ¶ 113. The article states that "Before Owner," Metro Pizza "could not customize their previous ChowNow system's look and feel to tell their story." *Id.* ¶ 117. It also states that "With Owner," Metro Pizza can use Owner.com's "hybrid delivery" feature which provides "the flexibility to use a combination of their own in-house drivers and third-party drivers." *Id.* ¶ 120. The article provides a link to "Other success stories," which leads to another customer testimonial by Doo-Dah Diner. *Id.* ¶ 125.

(4) **RestaurantGPT:** The RestaurantGPT website provides scores for restaurants' "online health," which purports to be an aggregation of three sub-scores for "Search Results," "Website Experience," and "Local Listings." *Id.* ¶ 131.

(5) **YouTube videos:** Owner.com's YouTube channel has at least two videos that discuss ChowNow. *Id.* ¶ 170. The first video, titled "Why Restaurants Are Leaving ChowNow," includes statements that ChowNow has "no ability to promote new menu items," "no loyalty system integration," and "no website builder," and that ChowNow promotes its own ChowNow mobile application instead of a restaurant's mobile application. *Id.* ¶ 172. The second video, titled "How To Get A Mobile App For Your Restaurant In 7 Days (2024)," includes statements that ChowNow "can't promote new menu items," ChowNow promotes its own mobile application instead of its restaurant

12

partner's application, and ChowNow does not have a website builder. *Id.* ¶ 180.

ChowNow's false advertising claims sound in fraud and must meet the heightened pleading standard of Rule 9(b). *See Peak Health Ctr. v. Dorfman*, No. 19-cv-04145-VKD, 2019 WL 5893188, at *10 (N.D. Cal. Nov. 12, 2019) (applying Rule 9(b) to false advertising claim); *Corsair Gaming, Inc. v. Choice Elecs. Inc.*, No. 5:25-cv-00045-BLF, 2025 WL 2822691, at *5 (N.D. Cal. Oct. 3, 2025) (quoting *Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013)) (noting that "[d]istrict courts in the Ninth Circuit have held that the heightened pleading standard of [Rule 9(b)] applies to false advertising claims"). ChowNow must plead "the who, what, when, where, and how" of the fraudulent conduct. *Peak Health*, 2019 WL 5893188, at *10 (quoting *Vess v. Giba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

### a.    Capterra/G2 scores

With respect to ChowNow's allegations regarding Owner.com's statements about Capterra and G2 scores, Owner.com argues that ChowNow fails to adequately allege that the statements were false at the time they were published. *See* Dkt. No. 15 at 17-19.  However, ChowNow's false advertising claims are premised, in part, on Owner.com's continued publication of the challenged statements even after they became inaccurate. *See, e.g.*, Dkt. No. 1 ¶ 47 (ChowNow alleging that "[r]epresenting false Capterra Scores as being 'current as of 2025' is also deceptive, misleading, and false."); Dkt. No. 24 at 12 n.6.

Construing the allegations of the complaint in ChowNow's favor, the Court finds that ChowNow adequately pleads claims for false advertising with respect to Owner.com's statements regarding the parties' Capterra and G2 scores.  ChowNow alleges that Owner.com (who) published statements regarding Owner.com's and ChowNow's Capterra and G2 scores (what) on Owner.com's website (where) as of June 2025 (when).  ChowNow claims the statements were false because as of June 2025, ChowNow's and Owner.com's Capterra and G2 scores differed from the scores on Owner.com's website, despite Owner.com's statement that the scores were "current as of 2025" (how).  Specifically, ChowNow alleges that Owner.com's website states that Owner.com's Capterra score is 4.9 and ChowNow's Capterra score is 4.0 "as of 2025."  Dkt. No.

United States District Court
Northern District of California

1 ¶ 43. ChowNow states that as of June 2025, Owner.com's and ChowNow's Capterra scores were the same—4.6. *Id.* ¶¶ 45-46. In addition, ChowNow alleges Owner.com represented that its G2 score is 4.9 and ChowNow's G2 score is 4.0. *Id.* ¶ 74. ChowNow contends that as of June 2025, its G2 score was 4.6. *Id.* ¶ 75. ChowNow also plausibly alleges that Capterra and G2 scores are material to customers and that Owner.com's statements have deceived ChowNow's customers and caused lost sales. *See id.* ¶¶ 48, 70, 85, 201.

Accordingly, the Court concludes that ChowNow adequately states claims for false advertising based on Owner.com's statements regarding the parties' Capterra and G2 scores.

b.    <strong>Customer testimonials</strong>

ChowNow challenges Owner.com's use of customer testimonials by Saffron Indian Kitchen, Metro Pizza, and Doo-Dah Diner on Owner.com's website. *Id.* ¶¶ 102-129. ChowNow does not plausibly allege that Owner.com's statements regarding Saffron Indian Kitchen and Doo-Dah Diner are false or misleading. ChowNow does not allege that either testimonial mentions ChowNow or that any statements in those testimonials are false or misleading. To the extent ChowNow claims that merely placing these testimonials on Owner.com's comparison page or on its "case studies" page is "misleading," *see id.* ¶¶ 102-109, 125-127, it fails to state a claim for false advertising.

However, ChowNow sufficiently pleads claims for false advertising with respect to Owner.com's Metro Pizza testimonial. The Metro Pizza testimonial clearly implicates ChowNow as it is titled, "How Metro Pizza increased direct online sales by $10,000/m by switching from ChowNow for Owner." *Id.* ¶ 113. ChowNow adequately alleges facts from which it can be inferred that statements in the testimonial are false. *Id.* ¶¶ 116-123. For example, the testimonial states that "[b]efore Owner," Metro Pizza "could not customize their previous ChowNow system's look and feel to tell their story." *Id.* ¶ 117. ChowNow alleges that statement is false because ChowNow does offer customization options. *Id.* ¶ 118. ChowNow also alleges that statements indicating that specific restaurants have switched from ChowNow to Owner.com are "of direct importance to restaurants seeking a digital solution partner" and have caused ChowNow to lose customers. *Id.* ¶¶ 32, 33, 201.

United States District Court
Northern District of California

14

Accordingly, the Court concludes that ChowNow adequately states claims for false advertising based on the Metro Pizza testimonial on Owner.com's website, but not based on the Saffron Indian Kitchen and Doo-Dah Diner testimonials.

### c.      YouTube videos

ChowNow alleges that the statements in the two YouTube videos in dispute are false because contrary to Owner.com's statements, ChowNow gives restaurants the ability to promote new menu items, has a loyalty system, offers a custom website builder, and does not self-promote its mobile application on restaurant partners' mobile applications. *See* Dkt. No. 1 ¶¶ 174-179, 183-184. It is not clear from the complaint when the videos were posted, but apparently they were still accessible as of June 29, 2025. *See* Dkt. No. 2 ¶¶ 23, 24. While ChowNow sufficiently alleges facts from which it can be inferred that the statements in the YouTube videos are false (at least as of June 2025), it fails to allege that any customers likely encountered these videos, or would have relied on the statements in the videos if they had encountered them.

Accordingly, the Court concludes that ChowNow fails to state claims for false advertising with respect to the challenged statements in Owner.com's YouTube videos.

### d.      Comparison page and RestaurantGPT website

ChowNow challenges certain statements on Owner.com's comparison page and its RestaurantGPT website. Dkt. No. 1 ¶¶ 87, 95, 98, 131. However, while ChowNow adequately identifies the statements at issue, it fails to plead that they are actually false, identify what is false about them, and plausibly allege that the statements likely influenced customers' purchasing decisions. For example, ChowNow challenges the statements that Owner.com provides a "2-4x conversion rate on Owner websites vs. average" and that restaurants using Owner.com experience "+85% reorders from guests" on the grounds that these statements lack "evidentiary support or substantiation." *Id.* ¶¶ 89-90. Similarly, ChowNow contends that statements on the RestaurantGPT website are false because Owner.com "relies on untransparent methodologies and algorithms." *Id.* ¶ 138. ChowNow's allegations concerning these statements are conclusory; it does not identify anything false about any of these statements or allege that they are material. Rather, ChowNow's principal objection appears to be that it cannot discern the basis for

United States District Court
Northern District of California

United States District Court
Northern District of California

Owner.com's statements.  *See id.* ¶¶ 90, 138.  That does not mean the statements are false, nor does ChowNow plead that they are.

ChowNow also alleges that Owner.com makes a statement regarding BentoBox ("Unlike BentoBox, who adds fees for implementation, customizing your accounts, and adding new capabilities, we'll charge you a flat fee to access the whole platform.") that is misleading.  *Id.* ¶¶ 98-100.  As with the Saffron Kitchen testimonial, ChowNow objects to this statement as "misleading and confusing" because it is on the comparison page.  *Id.*  However, ChowNow does not allege that the statement itself is false, or that any customers saw this statement, or are likely to have relied upon it or found it material.

Finally, ChowNow alleges that the statement that "when Google visitors try to order, ChowNow sends them to the ChowNow app, which isn't good for your website's Google ranking" is false because "directing consumers to an external ordering platform does not impact Google rankings." *Id.* ¶ 96.  While ChowNow adequately alleges why the statement is false or misleading, it does not allege that any customers saw this statement, or are likely to have relied upon it or found it material.

Accordingly, the Court concludes that ChowNow fails to state claims for false advertising with respect to the challenged statements on Owner.com's comparison page and its RestaurantGPT website.

### 2.  Claims 1 and 2: Trademark infringement

ChowNow also asserts claims for trademark infringement under 15 U.S.C. § 1114(a) and 15 U.S.C. § 1125(a) of the Lanham Act.  Dkt. No. 1 ¶¶ 198-215.  It is not clear whether ChowNow means to assert a claim for trademark infringement under § 1125(a)(1)(A) or § 1125(a)(1)(B). *Compare id.* ¶ 202 *with* Dkt. No. 24 at 15.  This discrepancy must be clarified if ChowNow chooses to file an amended complaint.  In this order, the Court addresses only whether ChowNow states a claim for relief under § 1114(a).

To state a claim for trademark infringement under 15 U.S.C. § 1114(a), a plaintiff must plausibly allege that (1) it has a valid, protectable trademark; (2) the defendant used the mark in connection with goods or services; and (3) that use is likely to cause confusion, mistake, or

deception. *LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1125 (9th Cir. 2024); *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).  ChowNow claims that Owner.com uses the CHOWNOW mark in comparative advertising without authorization.  *See, e.g.*, Dkt. No. 1 ¶¶ 31, 194.  Owner.com responds that ChowNow's trademark infringement claim fails because "there is no allegation that consumers were confused as to the 'source of the products' nor can there be."  Dkt. No. 15 at 15 (quoting *Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999)).  Owner.com asserts that, in any event, ChowNow's claim fails as a matter of law because Owner.com's uses of ChowNow's mark qualify as nominative fair use. *Id.* at 15-16.

The Court agrees with Owner.com that the complaint fails to plausibly allege any use of the CHOWNOW mark likely to cause confusion or mistake or to deceive any customer or prospective customer regarding the source of the goods or services at issue.  Rather, ChowNow's trademark infringement claim merely repackages what are essentially false advertising claims.  To the extent ChowNow complains that Owner.com infringes the CHOWNOW mark merely because it uses the word "ChowNow" in comparative advertising, such a claim cannot succeed.  *See New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) ("[I]t is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark.").  Competitors may use a rival's trademark in advertising, so long as that use is not false or misleading.  *Id.* at 307.  Such use "lies outside the strictures of trademark law:  Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder."  *Id.* at 308.

Here, ChowNow's own allegations indicate that Owner.com used the term "ChowNow" to convey information *comparing* the services provided by the parties and not to suggest to consumers that Owner.com was part of ChowNow or that its services are sponsored or authorized by ChowNow.  ChowNow does not plausibly allege that such use of ChowNow's mark infringes. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1154 (9th Cir.

2011) ("[T]he linchpin of trademark infringement is consumer confusion . . . ."); *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024) (actionable trademark infringement applies "only to 'misleading and deceptive' uses of a mark, not to 'legitimate comparative and contextual advertising'"), *cert. denied*, 145 S. Ct. 2732 (2025).

Accordingly, the complaint fails to state a claim for trademark infringement under § 1114 of the Lanham Act.

### 3. Claim 3: Unfair competition

ChowNow asserts a claim for violation of California's UCL, Bus. & Prof. Code § 17200. Dkt. No. 1 ¶¶ 216-219. Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The Court considers whether ChowNow states a claim that Owner.com engaged in an "unlawful" or "unfair" business act or practice.[2]

### a. "Unlawful" prong

Section 17200's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (citations omitted). Thus, "to state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d. 1087, 1097 (N.D. Cal. 2014).

ChowNow asserts that Owner.com engaged in false advertising and trademark infringement in violation of the Lanham Act. As explained above, to the extent ChowNow states a claim for false advertising, it likewise states a claim that Owner.com engaged in an "unlawful" business practice in violation of the UCL.

### b. "Unfair" prong

The "unfair" prong of the UCL "prohibit[s] 'not only advertising which is false, but also

---

[2] It is not entirely clear from the complaint on which prongs of the UCL ChowNow bases its unfair competition claim. Owner.com moves to dismiss with respect to all three prongs (unlawful, unfair, and fraudulent). *Compare* Dkt. No. 15 at 19-21 *with* Dkt. No. 24 at 16-18. At the December 16, 2025 hearing, ChowNow's counsel represented that ChowNow's unfair competition claim is limited to the "unlawful" and "unfair" prongs of the UCL.

advertising which[,] although is true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (Cal. Ct. App. 2018) (citation omitted). For business competitor UCL claims, the alleged unfairness must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (Cal. 1999). Additionally, conduct is "unfair" under the UCL if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187; *see also Snapkeys, Ltd. v. Google LLC*, No. 19-cv-02658-LHK, 2020 WL 6381354, at *3 (N.D. Cal. Oct. 30, 2020) (same). "Injury to a competitor is not equivalent to injury to competition," *Cel-Tech Commc'ns*, 20 Cal. 4th at 186, and "[a] plaintiff must allege harm to the competitive market 'as a whole,' not just to a competitor," *Snapkeys*, 2020 WL 6381354 at *3 (quoting *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 502 (Cal. Ct. App. 2011)).

While ChowNow alleges injury to itself, it has not alleged any facts plausibly showing any harm to competition in the relevant market. The complaint contains only conclusory allegations that Owner.com's conduct is "unfair and therefore a violation of these provisions," and that "Owner.com's disruption and interference" with ChowNow's relationships with customers "constitutes unfair competition." Dkt. No. 1 ¶¶ 217, 242. Such conclusory allegations are insufficient to support a claim for unfair business competitor practices under the UCL. *See Levitt v. Yelp!, Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) (concluding that plaintiffs' "general allegation" that defendant "harms competition by favoring businesses that submit to Yelp's manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising" did "not satisfy *Cel–Tech's* requirement that the effect of Yelp's conduct amounts to a violation of antitrust laws 'or otherwise significantly threatens or harms competition.'").

ChowNow fails to state a UCL claim under the "unfair" prong of the statute.

United States District Court
Northern District of California

19

#### 4. Claims 5, 6, and 7: Trade libel, intentional interference with contractual relations, intentional interference with prospective economic advantage

ChowNow asserts claims for trade libel, intentional interference with contractual relations, and intentional interference with prospective economic advantage.  Dkt. No. 1 ¶¶ 225-244.  Owner.com argues that ChowNow's allegations are conclusory and do not identify specific customers or transactions lost, nor is there any allegation that Owner.com knew of ChowNow's contracts with customers.  Dkt. No. 15 at 22-26.

##### a.    Trade libel

ChowNow's trade libel claim is based on Owner.com's "false statements about ChowNow's business, products and services . . . through its commercial advertising and promotion."  Dkt. No. 1 ¶ 226.

"Trade libel is an intentional disparagement of the quality of services or product of a business that results in pecuniary damage to the plaintiff."  *J-M Mfg. Co. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 97 (Cal. Ct. App. 2016).  "A trade libel claim requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages."  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1154 (N.D. Cal. 2019) (quoting *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988)); *see also Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (Cal. Ct. App. 1989) ("[A] cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss.") (citation omitted).  Moreover, a plaintiff must allege:  (1) who made the statements, (2) to whom the statements were made, (3) the time and place of publication, and (4) the substance of the statements.  *AlterG*, 388 F. Supp. 3d at 1154.  The plaintiff must "identify particular customers and transactions of which it was deprived as a result of the libel."  *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (Cal. Ct. App. 2004).

Owner.com argues that ChowNow's claim relies on "generalized allegations" and that ChowNow fails to identify particular customers and transactions of which it was deprived because of the alleged trade libel.  Dkt. No. 15 at 22-23.  The Court agrees.  ChowNow alleges that "current restaurant partners have been induced to switch to Owner.com's services, and prospective restaurant partners have been induced not to do business with ChowNow."  Dkt. No. 1 ¶ 230.

While ChowNow identifies one former customer by name, Metro Pizza, its allegations are otherwise conclusory. A trade libel plaintiff must allege and eventually "prove that the statement played 'a material and substantial part in inducing others not to deal with [the plaintiff].'" *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (citation omitted), *aff'd*, 609 F. App'x 497 (9th Cir. 2015). ChowNow's allegations merely conclude that it lost current and prospective customers "[a]s a direct result of Owner.com's publication of these false statements in its commercial advertising and promotions." Dkt. No. 1 ¶ 230. As to Metro Pizza, ChowNow states in conclusory manner that "Owner.com knew of or should have known of the contractual and business relationship between ChowNow and Metro Pizza" and that "Metro Pizza's switch to Owner.com was based on Owner.com's deceptive advertising regarding ChowNow." *Id.* ¶¶ 128, 129. ChowNow fails to allege any facts that plausibly suggest that Metro Pizza or other customers were induced not to deal with ChowNow because of Owner.com's false statements.

The Court finds that ChowNow fails to state a claim for trade libel.

### b. Intentional interference with contractual relations

In California, a claim of intentional interference with contractual relations requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1191 (9th Cir. 2022) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (Cal. 1990)).

Again, ChowNow only vaguely and generally refers to contracts with customers. *See* Dkt. No. 1 ¶ 234 ("ChowNow has developed and has maintained contractual relationships with customers consisting of, *inter alia*, restaurant owners."). In its opposition brief, ChowNow contends that it sufficiently identified at least one customer, Metro Pizza, as a customer with whom ChowNow had a contract with which Owner.com intentionally interfered. Dkt. No. 24 at 19-20. However, the complaint merely alleges that Owner.com "knew or should have known of the contractual and business relationship between ChowNow and Metro Pizza," Dkt. No. 1 ¶ 128,

United States District Court
Northern District of California

and does not allege facts plausibly supporting the existence of a valid contract between ChowNow and Metro Pizza or the other required elements, including Owner.com's knowledge of the contract.

In addition, ChowNow does not plausibly allege that Owner.com uses the RestaurantGPT website to target ChowNow's customers. *See id.* ¶ 135 ("Upon information and belief, Owner.com is capable of[] using the RestaurantGPT Tool, identifying existing contractual relationships and business relationships between restaurants and their existing digital software platform providers, such as ChowNow."). Its existing allegations are wholly conclusory. *See Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-cv-06545-PJH, 2018 WL 1091257, at \*10 (N.D. Cal. Feb. 28, 2018) (finding allegations that defendants queried a public database were insufficient to plead defendants' knowledge of plaintiff's customer relationships).

The Court finds that ChowNow fails to plead a claim for intentional interference with contractual relations.

### c. Intentional interference with prospective economic advantage

Intentional interference with prospective economic advantage requires "essentially the same elements as a claim for intentional interference with contractual relations, but additionally 'requires proof that the defendant not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.'" *Stereoscope, LLC v. U.S. Bank Nat'l Ass'n*, 675 F. App'x 725, 726 (9th Cir. 2017) (internal quotation marks and citation omitted). A plaintiff claiming interference with prospective economic advantage must plead a business relationship with a specific third party containing "the probability of future economic benefit to the plaintiff." *Piping Rock*, 946 F. Supp. 2d at 980 (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 (Cal. 1987)) (internal quotation marks omitted); *see also AlterG*, 388 F. Supp. 3d at 1151.

ChowNow's claim for intentional interference with prospective economic advantage fails for similar reasons. ChowNow fails to identify an economic relationship with a specific customer. *See RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 4039322, at \*5 (N.D. Cal. July 17, 2020) ("General allegations regarding prospective or future customers are insufficient

because they fail to adequately suggest that those relationships contain a probability of future economic benefits."). In addition, the complaint does not indicate that Owner.com's conduct "was wrongful by some legal measure other than the fact of interference itself." As the Ninth Circuit noted, "So long as the plaintiff's contractual relations are merely contemplated or potential, it is considered to be in the interest of the public that any competitor should be free to divert them to himself by all fair and reasonable means . . . In short, it is no tort to beat a business rival to prospective customers." *New Kids on the Block*, 971 F.2d at 310 (affirming dismissal of intentional interference with prospective economic advantage and noting that plaintiffs "ignore the maxim that all's fair in love, war and the free market").

The Court concludes that ChowNow fails to sufficiently plead a claim for intentional interference with prospective economic advantage.

**IV.    LEAVE TO AMEND**

Rule 15(a) provides that leave to amend "should be freely given when justice so requires," and "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotations and citations omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Although the Court harbors some doubt that ChowNow can amend its complaint to state a plausible claim for trademark infringement, the Court anticipates that ChowNow may be able to amend the complaint to address some or all of the deficiencies described above. Therefore, the Court gives ChowNow leave to amend its complaint as to all existing claims.

**V.    CONCLUSION**

For the reasons discussed above, the Court denies Owner.com's motion to dismiss for lack of standing, and grants in part and denies in part its motion to dismiss for failure to state a claim,

as follows:

(1) Claim 1 (false advertising) is dismissed as to the Saffron Indian Kitchen and Doo-Dah Diner testimonials; statements in the YouTube videos; statements on the comparison page; and statements on the RestaurantGPT website, with leave to amend. The motion is denied as to the statements regarding Capterra and G2 scores and the Metro Pizza testimonial.

(2) Claim 1 (trademark infringement) is dismissed, with leave to amend.

(3) Claim 2 (trademark infringement) is dismissed, with leave to amend.

(4) Claim 3 (unfair competition) is dismissed as to the "unfair" prong of the UCL, with leave to amend. The motion is denied as to the "unlawful" prong of the UCL.

(5) Claim 4 (false advertising) is dismissed as to the Saffron Indian Kitchen and Doo-Dah Diner testimonials; statements in the YouTube videos; statements on the comparison page; and statements on the RestaurantGPT website, with leave to amend. The motion is denied as to the statements regarding Capterra and G2 scores and the Metro Pizza testimonial.

(6) Claim 5 (trade libel) is dismissed, with leave to amend.

(7) Claim 6 (intentional interference with contractual relations) is dismissed, with leave to amend.

(8) Claim 7 (intentional interference with prospective economic advantage) is dismissed, with leave to amend.

ChowNow may file an amended complaint no later than **February 3, 2026**.

**IT IS SO ORDERED.**

Dated: January 16, 2026

Virginia K. DeMarchi
United States Magistrate Judge

24